IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY JOACHIM,

                              Plaintiff,

    v.                                                               OPINION and ORDER

MARTIN O'MALLEY,[1]                                              22-cv-346-jdp
Commissioner of Social Security,

                              Defendant.

---

Plaintiff Gary Joachim seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of the Social Security Administration, finding that Joachim was not disabled within the meaning of the Social Security Act. Joachim argues that administrative law judge (ALJ) Ahavaha Pyrtel impermissibly "cherry picked" from the record, and by doing so overlooked evidence of his lumbar spine disorder and his difficulty interacting with others. The court rejects this argument. The ALJ fairly assessed the evidence, and her conclusions have adequate support in the record. So the court will affirm the commissioner's decision.

BACKGROUND

Joachim applied for both supplemental security income and disability insurance benefits in November 2019. R. 23.[2] He alleged that he had been unable to work since January 1, 2018, because of wrist pain, chronic obstructive pulmonary disease (COPD), post-traumatic stress

---

[1] The court has amended the caption to reflect Martin O'Malley's appointment as Commissioner. *See* Fed. R. Civ. P. 25(d).

[2] Record cites are to the administrative transcript located at Dkts. 12 and 12-1.

disorder (PTSD), depression, and anxiety. R. 86. After the local disability agency denied his claim initially and on reconsideration, Joachim requested a hearing, which was held telephonically on May 27, 2021, before ALJ Pyrtel. R. 23. Joachim appeared with counsel and testified. The ALJ also heard testimony from a vocational expert.

After the hearing, the ALJ issued a written decision denying Joachim's request for benefits. R. 23–38. The ALJ found that Joachim suffered from COPD, spine disorders, osteoarthritis and allied disorders, cardiomyopathy, anxiety, depression, schizophrenia disorder, personality disorder, trauma-related disorder, and alcohol addiction disorder. R. 26. The ALJ determined that Joachim has the physical residual functional capacity (RFC) to perform medium work, with no more than frequent stooping. The ALJ also included a number of restrictions to account for Joachim's mental impairments, including limitations to simple, routine, and repetitive tasks with no production rate or quota; few, if any changes in the work setting; no more than occasional interaction with coworkers and supervisors; and no interaction with the public. R. 29.

Relying on the testimony of the vocational expert, the ALJ found that Joachim could not perform his past relevant work as a commercial cleaner and hand packager, but he was not disabled because he could perform jobs that are available in significant numbers in the national economy, including cleaner and hospital cleaner. R. 37–38.

The Appeals Council denied Joachim's request for review, making ALJ Pyrtel's decision the final decision of the commissioner. Joachim then filed this appeal under 42 U.S.C. § 405(g).

ANALYSIS

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. An ALJ must consider all relevant medical evidence and cannot "cherry pick" facts that support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). But an ALJ does not need to comment on every piece of evidence so long as she builds the "logical bridge" between the cited evidence and the final decision. *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Joachim argues that ALJ Pyrtel failed to build that bridge when she "cherry picked" evidence supporting a finding of non-disability and ignored evidence of Joachim's lumbar spine degeneration and difficulties interacting with others.

## A.  Lumbar spine degeneration

In her decision, the ALJ determined that Joachim had a number of severe, medically-determinable impairments, one of which was "spine disorders." R. 26. The ALJ didn't specify the nature of this disorder, but her discussion focused on a CT scan showing degenerative changes in the cervical spine, examinations of Joachim's cervical spine, evaluation for neck pain, and treatment for that condition. R. 30, 32.

Joachim doesn't challenge the ALJ's analysis of the record concerning his cervical spine. But he argues that the ALJ's evaluation was incomplete because she overlooked evidence that Joachim also has degeneration of his lumbar spine. Joachim argues that the overlooked evidence

3

calls into question the ALJ's conclusion that he can perform medium work, which requires the ability to lift up to 50 pounds occasionally and 25 pounds frequently. Joachim points out that if he is limited to light work, then he would be disabled under Rule 202.06 of the Medical-Vocational Guidelines. Dkt. 16, at 18.[3]

Joachim's argument is unpersuasive. As an initial matter, it's undisputed that no doctor has ever diagnosed him with degenerative disc disease of the lumbar spine or any other lumbar impairment. Joachim's arguments rests on his *own* conclusion that he has a lumbar spine impairment, which he draws from two imaging reports: (1) a July 2020 x-ray of Joachim's pelvis—taken in response to Joachim's reports of right shoulder pain, right chest wall pain, and left hip pain sustained in a fall—which noted "scattered degenerative changes present in the lower lumbar spine," R. 1315; and (2) an October 4, 2020, CT scan of his abdomen and pelvis, obtained in response to Joachim's complaints of constipation, which also noted "multilevel degenerative changes of the lumbar spine, most pronounced at the L4-L5 level." R. 1073. But just because Joachim, at age 59, had some undefined "degenerative changes" in his lumbar spine on imaging doesn't mean that he has a lumbar spine impairment; that would be up to a doctor to determine. Again, Joachim doesn't point to any such diagnosis in the record.

More importantly, even if the evidence did tend to support such a diagnosis, a diagnosis alone is not evidence of disability; what matters are the work-related limitations that result from a particular medical impairment. *McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("Medical evidence supports the existence of the condition, but

---

[3] Joachim's brief also mentions the ALJ's analysis of the Listings, see R. 26–27, but the court does not understand him to be challenging that part of the ALJ's decision. If that is his argument, he has not developed it, so it is forfeited. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in forfeiture).

the need for restrictions cannot be inferred from the diagnosis alone."); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). As evidence of such limitations, Joachim cites to a March 16, 2021, neurology clinic visit where he was seen for a tremor in his limbs that reportedly began when he stopped drinking six months earlier. R. 1488. Dr. Mary A. Werz performed a reflex test ("(R/L Biceps 2+/3+ Brachioradialis 2+/3+ Triceps 2+/3+ Quadriceps 3+/3+ Achilles 3+/3+"). R. 1494. She also made the following notations: (1) "decreased arm swing" and (2) "able to do tandem with modest unsteadiness." *Id.* Werz thought that Joachim's anxiety and psychiatric medications likely were causing his neurological symptoms. R. 1498.

Citing to articles from the Cleveland Clinic and the National Institutes of Health, Joachim argues that the "hyper-reflexivity on the left side" of his body and the "unsteadiness with tandem gait" are signs "known to correlate" with injuries to the nervous system. Dkt. 16 at 15. Once again, Joachim is not a doctor. He is not qualified to determine whether the results of the reflex test administered by Werz demonstrated "hyper-reflexivity," much less to second-guess her opinion that his tremor was not related to any physical abnormality.

And the ALJ wasn't a doctor, either. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor" and come to her own conclusions about medical evidence) (citing *Herron v. Shalala*, 19 F.3d 329, 334 n. 10 (7th Cir. 1994)). She was limited to the record before her, which contained no medical diagnosis of a lumbar spine impairment and no medical evidence of any functional limitations in Joachim's lower back, much less evidence supporting the lifting restrictions that Joachim suggests the ALJ should have included. (The few vague allegations of unspecified "back pain" that Joachim points out are

5

not medical evidence of any specific limitations.) Accordingly, she did not err in failing to reduce Joachim to light work based on a lumbar spine impairment.

**B. Interacting with others**

When evaluating whether Joachim's mental impairments were presumptively disabling, the ALJ found that Joachim had a moderate limitation in interacting with others. R. 29. Then, when assessing Joachim's RFC, the ALJ found that he should have no more than occasional interaction with coworkers and supervisors and no interaction with the public. In support, the ALJ noted that Joachim regularly cooperated with his providers and was often described as pleasant; he regularly demonstrated "appropriate behavior;" and despite occasional irritation, he consistently presented to his providers with normal speech and normal mood and affect. The ALJ also cited parts of Joachim's hearing testimony, noting that he admitted spending time with others, including volunteering with a friend, attending five sobriety meetings a week (three traditional Alcoholics Anonymous meetings and two sessions that incorporate religion and spirituality), and meets weekly with his psychologist and his nurse. R. 33–34; R. 64-65. The ALJ also cited a progress note in which Joachim told his case manager that multiple people had commented to him on how much better his mood was since he stopped drinking and that they could not tolerate talking to him when he drinks. R. 34 (citing R. 1189). Finally, the ALJ found "generally persuasive" the opinion of a state agency psychologist, who concluded from her review of the records that Joachim had occasional social limitations and would do best in jobs with limited interactions with others. R. 36.

Joachim doesn't challenge any of this. Instead, he argues that reversal is required because the ALJ didn't mention Joachim's estrangement from his wife and pending charges of battery and elder abuse, R. 53, 1012, his testimony that he had a dispute with a previous

6

coworker, R. 56, and his reported paranoid thoughts that people were out to get him, R. 61, 1754. This argument is not persuasive. The ALJ recognized Joachim's testimony that he had problems getting along with others, and she noted records where he presented to his providers as agitated or irritated. R. 28. So the ALJ didn't ignore an entire line of evidence. Rather, she simply gave more weight to the evidence suggesting that Joachim was not as limited in getting along with others as he claimed. As in most disability cases, the evidence before the ALJ allowed for competing inferences about Joachim's social functioning. This court cannot second-guess how the ALJ reconciled that evidence. *Bakke v. Kijakazi*, 62 F.4th 1061, 1070 (7th Cir. 2023) ("Where the ALJ clearly notes all evidence—that which supports his conclusion and that which undermines it—we cannot replace his judgment with ours.").

Finally, Joachim argues that it was inappropriate for the ALJ to cite his attendance at AA and church meetings as proof of his ability to interact with others. Joachim asserts that he has to go to those meetings in order to maintain his sobriety, so it was unfair for the ALJ to use this as a reason to deny his claim.

The court disagrees. Contrary to Joachim's argument, nothing in the regulations nor the case law precludes an ALJ from considering activities that a person "must" do as opposed to those he does voluntarily. And in any case, Joachim's attendance at meetings was just one piece of evidence the ALJ relied on. A reasonable person could look at the other pieces of evidence—his presentation at visits with providers, his time spent volunteering with a friend, and his self-reported improved interactions with people after becoming sober—and agree with the ALJ that Joachim could handle occasional interactions with supervisors and coworkers.

7

**C. Conclusion**

In his testimony, Joachim stated that the biggest impediment to employment was his homelessness. R. 60. The court is sympathetic to his plight and hopes he can secure safe and stable living conditions. But the ALJ adequately addressed Joachim's disability-related limitations and supported her determination with substantial evidence from the record, so her decision must be affirmed.

ORDER

IT IS ORDERED that the decision of the commissioner denying Gary Joachim's application for disability benefits is AFFIRMED. The clerk of court is directed to enter judgment in the commissioner's favor and close this case.

Entered September 30, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge